UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

RYAN GUNZINGER,                )
                               )
         Plaintiff             )
v.                             )   No. 2:17-cv-00125-GZS
                               )
JOHN LUCAS TREE EXPERTS        )
CO., et al.,                   )
                               )
         Defendants            )

MEMORANDUM DECISION AND ORDER ON DEFENDANTS' MOTION
TO COMPEL PRODUCTION OF PLAINTIFF'S MENTAL HEALTH RECORDS

In this employment action, the defendants seek to compel the production of records generated during the course of the plaintiff's psychotherapy treatment by a licensed social worker on the bases that the plaintiff expressly waived his psychotherapist-patient privilege and, in any event, the denial of access to those records would be unfairly prejudicial. In the alternative, the defendants seek an order clarifying that certain damages do not qualify as "garden-variety" emotional distress damages. Finally, they seek to depose the plaintiff's treating social worker regardless of whether access to her records is granted.

Treating the discovery dispute as a motion to compel, and with the benefit of letter briefs and responses that I directed the parties to submit, *see* ECF No. 20, I deny the motion for the reasons that follow.

## I. Applicable Legal Standard

Rule 26(b) of the Federal Rules of Civil Procedure outlines the general scope of permissible discovery in a civil action.

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering

the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

"[A] party resisting discovery has the burden of showing some sufficient reason why discovery should not be allowed[.]" *Flag Fables, Inc. v. Jean Ann's Country Flags & Crafts, Inc.*, 730 F. Supp. 1165, 1186 (D. Mass. 1989) (citation and internal quotation marks omitted). In addition, the proponent of a privilege bears the burden of demonstrating entitlement to its protection. *See, e.g., In re Keeper of Records (Grand Jury Subpoena Addressed to XYZ Corp.)*, 348 F.3d 16, 22 (1st Cir. 2003) ("Despite a grand jury's vaunted right to every man's evidence, it must, nevertheless, respect a valid claim of privilege. But the party who invokes the privilege bears the burden of establishing that it applies to the communications at issue and that it has not been waived.") (citations omitted).

## II. Factual Background

As relevant here, the plaintiff's complaint alleges the following:

The plaintiff began working for the defendant John Lucas Tree Experts Co. ("Lucas Tree") as a laborer on August 15, 2011. *See* Complaint and Request for Jury Trial and Injunctive Relief ("Complaint") (ECF No. 1) ¶ 17. On February 27, 2015, the plaintiff went home after working a full day and woke up in the emergency room after passing out from dehydration. *See id.* ¶ 19. The next day, he informed his supervisor of his condition, and was told to remain home and rest. *See id.* ¶ 20. On March 2, 2015, the plaintiff returned to work but did not feel well, and he called out of work on March 3, 2015. *See id.* ¶¶ 21-22. He never returned to work. *See id.* ¶¶ 23-89.

On March 26, 2015, the plaintiff's doctor cleared him to return to work after treating him for potential liver and pancreas ailments. *See id.* ¶¶ 26, 29. Lucas Tree refused to allow the plaintiff to return to work until he received an additional evaluation by defendant Concentra Medical Centers ("Concentra"). *See id.* ¶ 31. Concentra never cleared the plaintiff to return to work, *see id.* ¶¶ 38-40, 54-70, and he was terminated by Lucas Tree on May 27, 2015, *see id.* ¶ 83.

The plaintiff alleges that Lucas Tree violated his rights pursuant to the Americans with Disabilities Act ("ADA"), the ADA Amendments Act of 2008 ("ADAAA"), the Maine Human Rights Act ("MHRA"), the Family and Medical Leave Act ("FMLA"), and the Maine Family Medical Leave Requirements Act ("MFMLR"), and that Concentra violated his rights pursuant to the ADA, ADAAA, and MHRA.[1] *See id.* ¶¶ 91-183. As to several of these claims, the plaintiff seeks damages for, *inter alia*, "severe emotional pain and suffering, mental anguish, humiliation, [and] loss of enjoyment of life[.]" *Id.* ¶¶ 101, 114, 125, 137.

During the course of written discovery, the plaintiff was asked to identify the health care providers who provided treatment in relation to the incident at issue in the suit. *See* Letter Brief dated October 19, 2017, from Katherine I. Rand, Esq. to Hon. John H. Rich III ("Defendants' Brief") at 2.[2] In response to that interrogatory, the plaintiff disclosed that he had seen Catherine Ouellette beginning in September 2015 "for assistance in dealing with the impact of his termination, the fact that [his] parents had to support him now and the financial and emotional impact on them having to do that." *See id.* (quoting the plaintiff's response to Lucas Tree's Interrogatory Number 10). In his responses to requests for production of documents that sought

---

[1] The plaintiff's suit also names an individual, Kathy Buxton, whom he alleges violated his FMLA rights. *See* Complaint ¶¶ 3, 148-59, 165-75.
[2] Attorney Rand, who represents Lucas Tree and Buxton, noted that Concentra joined in the Defendants' Brief. *See* Defendants' Brief at 1.

3

records from his health care providers, he noted that he had requested Ouellette's records and would produce them to the defendants when he received them. *See id.*

On July 24, 2017, the plaintiff notified the defendants that he was designating Ouellette as a treating expert witness. *See id.* at 3. At the same time, he provided the defendants with a letter from Ouellette outlining and describing her treatment of him. *See id.* The letter described, *inter alia*, conditions that the plaintiff alleged stemmed from his firing by Lucas Tree. *See id.* The letter also noted Ouellette's assessment that the plaintiff's termination had specific detrimental effects on his mental health. *See id.*

On September 21, 2017, the plaintiff's counsel confirmed to opposing counsel that she had received the plaintiff's medical file from Ouellette, but she refused to provide it to the defendants because she had determined that it contained sensitive information about the plaintiff's children. *See id.* She stated that the plaintiff would withdraw his designation of Ouellette as an expert witness and seek only "garden variety" emotional distress damages. *See id.* Counsel for defendants Lucas Tree and Buxton suggested that, instead, the plaintiff's counsel redact portions of the records discussing the plaintiff's children. *See id.* In a letter dated September 22, 2017, the plaintiff's counsel declined to do so, reiterating that the plaintiff would not produce Ouellette's records, invoking the psychotherapist-patient privilege, and stating that the plaintiff agreed to adopt the four limitations on emotional distress damages set forth in *Doe v. Brunswick Sch. Dep't*, No. 2:15-cv-257-DBH, 2016 WL 8732370, at *4 (D. Me. Apr. 29, 2016). *See id.* at 3. Those limitations are:

1. The plaintiff[] do[es] not pursue any claims for damages due to a medically diagnosable mental health condition.

2. The plaintiff[] do[es] not rely on any medical or mental health experts, providers, or records to prove damages.

3. The plaintiff[] do[es] not seek any damages based on hospitalizations or medical or mental health treatment or evaluation.

4. The plaintiff[] do[es] not seek damages for emotional distress beyond that which would likely be felt by any healthy, well-adjusted person as a result of the causes of action that [he] continue[s] to allege[.]

*See Doe*, 2016 WL 8732370, at *4.

Several days later, the plaintiff sat for his deposition. *See* Defendants' Brief at 3. There, the plaintiff's counsel restated these positions for the record. *See id.* Over objection, the plaintiff responded to several inquiries from defense counsel about the nature of his treatment with Ouellette and the issues they discussed. *See* Exh. B to Letter Brief dated October 19, 2017, from Rebecca S. Webber, Esq. to Judge John H. Rich III ("Plaintiff's Brief"); Defendants' Brief at 3-4 n.2.

### III. Discussion

The defendants argue that they are entitled to the patient notes and records of Ouellette on two grounds: that the plaintiff expressly waived the psychotherapist-patient privilege with his disclosures earlier in the case, and that they would be unfairly prejudiced if the plaintiff were allowed to shield the records, which appear to contain information relevant not only to damages but also to liability. *See* Defendants' Brief at 4-6. In the alternative, they seek an order declaring certain damages outside the scope of garden-variety emotional distress damages. *See id*. at 7. Finally, regardless of whether access to the records is granted, they seek to depose Ouellette for the limited purpose of inquiring into the substance of her July 24, 2017, letter to the plaintiff's counsel, which was provided to them. *See id.* For the reasons set forth below, I deny all relief sought.

### A. The Plaintiff's Asserted Waiver of the Psychotherapist-Patient Privilege

The Supreme Court has affirmed the principle that confidential communications between a psychotherapist and patient "in the course of diagnosis or treatment" are privileged and, thus, "protected from compelled disclosure under Rule 501 of the Federal Rules of Evidence." *Jaffee v. Redmond*, 518 U.S. 1, 15 (1996) (footnote omitted). The privilege extends to confidential communications made to licensed social workers in the course of psychotherapy. *See id.* In so holding, the Court made clear that the "privilege protecting confidential communications between a psychotherapist and her patient promotes sufficiently important interests to outweigh the need for probative evidence[.]" *Id.* at 9-10 (citation and internal punctuation omitted). The Court recognized that "[e]ffective psychotherapy . . . depends upon an atmosphere of confidence and trust in which the patient is willing to make a frank and complete disclosure of facts, emotions, memories, and fears[,]" and that "the mere possibility of disclosure may impede development of the confidential relationship necessary for successful treatment." *Id.* at 10 (footnote omitted).

In adopting the privilege, the Court rejected the notion that the privilege could or should be subject to a balancing test, whereby it could be vitiated if a trial court found that, "in the interests of justice, the evidentiary need for the disclosure of the contents of a patient's counseling sessions outweighs that patient's privacy interests." *Id.* at 7 (citation and internal quotation marks omitted); *see also id.* at 17-18. The Court reasoned:

> Making the promise of confidentiality contingent upon a trial judge's later evaluation of the relative importance of the patient's interest in privacy and the evidentiary need for disclosure would eviscerate the effectiveness of the privilege. . . . [I]f the purpose of the privilege is to be served, the participants in the confidential conversation "must be able to predict with some degree of certainty whether particular discussions will be protected. An uncertain privilege, or one which purports to be certain but results in widely varying applications by the courts, is little better than no privilege at all."

*Id.* at 17-18 (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 393 (1981)).

Despite these strong protections, the psychotherapist-patient privilege can be either impliedly or expressly waived in certain circumstances. For example, it can be impliedly waived when a plaintiff seeks damages "for the inducement or aggravation of a diagnosable dysfunction or equivalent injury[,]" inherently placing his or her psychotherapeutic treatment at issue, *Davis v. Global Montello Grp. Corp.*, No. 2:16-cv-00418-JDL, 2017 WL 875782, at *1 (D. Me. Mar. 3, 2017) (citation and internal quotation marks omitted), although "the mere assertion of a damages claim for 'garden variety' or 'incidental' emotional distress is not sufficient to constitute waiver of the psychotherapist-patient privilege[,]" *Morrisette v. Kennebec Cty.*, No Civ. 01-01-B-S, 2001 WL 969014, at *1 (D. Me. Aug. 21, 2001).

And it can be expressly waived "[w]hen otherwise privileged communications are disclosed to a third party," destroying "the confidentiality upon which the privilege is premised[,]" *In re Keeper of Records*, 348 F.3d at 22. Indeed, "a party cannot partially disclose privileged communications or affirmatively rely on privileged communications *to support its claim . . .* and then shield the underlying communications from scrutiny by the opposing party." *In re Sims*, 534 F.3d 117, 132 (2d Cir. 2008) (citation and internal quotation marks omitted) (emphasis in original).

Here, the defendants do not argue that the plaintiff impliedly waived the privilege but, rather, that he expressly did so by his earlier conduct in the case, to wit: designating Ouellette as an expert witness, agreeing, without objection, to provide Ouellette's patient file and treatment notes from her work with him, providing the defendants with Ouellette's detailed letter summarizing her treatment of him, and answering questions at his deposition about his treatment with Ouellette. *See* Defendants' Brief at 5. They contend that, "having intentionally revealed the substance of his treatment with Ouellette, including testifying to the substance after indicating his intent to assert the privilege, [the plaintiff] has expressly waived the privilege." *Id*. Finally, they

assert that the mere fact that the plaintiff has withdrawn any previous claims of extreme emotional distress and pledged to seek only garden-variety emotional distress damages does not, and cannot, un-ring the bell of his earlier pleadings and actions. *See id.* at 5-6 (asserting that the plaintiff "has <u>expressly</u> waived the privilege, and . . . he may not 'un-waive' it by dialing back his claim for emotional distress") (emphasis in original).

For the reasons that follow, I conclude that the plaintiff meets his burden of demonstrating that he has not expressly waived the privilege. As discussed below, there are circumstances in which a privilege-holder who has made initial disclosures pertaining to psychotherapy can change his or her mind and, in effect, "un-ring the bell" by means of a timely disavowal of further reliance on the testimony or records of the psychotherapist and a pledge to seek only "garden variety" emotional distress damages. The plaintiff effectively did so here.

The parties do not cite, nor do I find, a First Circuit case addressing whether a privilege-holder who has made psychotherapy disclosures can preserve the psychotherapist-patient privilege through such a disavowal. However, as the plaintiff argues, *see* Reply Letter Brief dated October 23, 2017, from Rebecca S. Webber, Esq. to Judge John H. Rich III ("Plaintiff's Reply") at 2-4, his case aligns more closely with *Sims*, in which the United States Court of Appeals for the Second Circuit held that a privilege-holder's disclosures did not waive the privilege, than with *United States v. Bolander*, 722 F.3d 199, 223 (4th Cir. 2013), or *Jacobs v. Conn. Cmty. Tech. Colleges*, 258 F.R.D. 192, 196 (D. Conn. 2009), the cases cited by the defendants for the proposition that the privilege was waived, *see* Defendants' Brief at 5-6.

The court in *Sims* held that a privilege-holder had not waived the privilege in circumstances in which, (i) during his deposition, at which he appeared *pro se*, he testified regarding his mental distress as a result of the incident at issue and mental health treatment, (ii) he had not asserted a

8

claim for emotional distress damages in his complaint, and, (iii) after obtaining representation by counsel, he invoked the patient-psychotherapist privilege and withdrew any claim he may have asserted to recover for non-garden-variety emotional distress damages. *See Sims*, 534 F.3d at 121-25, 142.

The court recognized that the privilege-holder, "as a plaintiff in a civil case, was entitled not to pursue a claim he had asserted[,]" as a result of which "his subsequent counseled express disavowal of any claim for unusual emotional distress – whether such a claim was actually asserted or was merely imputed to him by respondents – should have been given effect." *Id*. at 136. The court explained: "In light of the transcendent importance of the psychotherapist-patient privilege as discussed in *Jaffee*, we agree . . . that a plaintiff may withdraw or formally abandon all claims for emotional distress in order to avoid forfeiting his psychotherapist-patient privilege[.]" *Id*. at 134.

In the absence of controlling authority from the First Circuit, I adopt the *Sims* court's well-reasoned approach, which both recognizes "the transcendent importance of the psychotherapist-patient privilege as discussed in *Jaffee*[,]" *id*., and comports with the principle that the plaintiff is the "master[] of the complaint," *Caterpillar Inc. v. Williams*, 482 U.S. 386, 395 (1987).

The defendants cite *Bolander* for the proposition that a privilege-holder waived the psychotherapist-patient privilege when he willingly provided privileged material to a third party and did not timely assert the privilege, and *Jacobs* for the proposition that a privilege-holder's disavowal of non-garden-variety emotional distress damages fell far short of remedying a waiver when the privilege-holder had produced letters from a treating psychotherapist addressed to his attorney detailing his mental health diagnoses. *See* Defendants' Brief at 5-6.

9

In my view, however, *Bolander* and *Jacobs* are materially distinguishable. The privilege-holder in *Bolander* failed to assert the psychotherapist-patient privilege at his deposition, "openly discuss[ing]" his participation in therapy, and waited until approximately one month before his evidentiary hearing to assert the privilege although "the case had been pending in the district court for quite some time." *Bolander*, 722 F.3d at 223. The *Bolander* court held, "By failing to timely assert the psychotherapist-patient privilege, [the privilege-holder] waived whatever privilege he may have had. Put another way, it was incumbent upon [the privilege-holder] to assert the psychotherapist-patient privilege in a timely fashion, rather than waiting until the eleventh hour to do so." *Id.*

In this case, by contrast, the plaintiff did not wait until the eleventh hour but, rather, asserted the privilege prior to his deposition, upon learning that he had reason to do so. *See* Plaintiff's Reply at 2.

The defendants argue that the plaintiff's counsel "made a strategic decision to designate Ouellette and to produce a detailed summary of [the plaintiff's] treatment" and that "[i]t would be patently unfair, and contrary to the basic principles of waiver, to permit her to reverse that decision now that she has apparently decided the witness and related evidence will do more harm than good to her client's case." Reply Letter Brief dated October 23, 2017, from Katherine I. Rand, Esq. to Hon. John H. Rich III ("Defendants' Reply") at 2.

However, as the plaintiff explains, *see* Plaintiff's Brief at 5, he designated Ouellette as a treating expert in compliance with the court's scheduling order, which required him to designate any experts, including treating physicians, by August 17, 2017, *see* ECF No. 15 at 2. In similar vein, he answered interrogatories and agreed to produce requested documents.

While it is true that, as the defendants point out, *see* Defendants' Reply at 2, the plaintiff could have chosen not to disclose Ouellette and, in that sense, made a deliberate, strategic choice to disclose her, I perceive no waiver in his decision to preserve the right to call her by making disclosures in compliance with discovery requests and deadlines during the period when he lacked information material to the decision whether to waive his psychotherapist-patient privilege. Upon receiving that information (the Ouellette file), the plaintiff's counsel promptly reviewed it and conveyed in writing to the defendants, three days prior to the plaintiff's September 25, 2017, deposition, her client's decision to withdraw Ouellette and abide by the *Doe* limitations. *See* Plaintiff's Brief at 5.[3] To the extent that the defendants argue that it is unfair to permit the plaintiff to "reverse" his waiver, *see* Defendants' Reply at 2, they overlook the fact that the plaintiff has elected to forgo potentially greater financial recovery in the form of higher emotional distress damages in favor of preservation of his psychotherapist-patient privilege.

Finally, unlike the privilege-holder in *Bolander*, the plaintiff did not simply testify freely and openly at deposition regarding his treatment with Ouellette. Instead, his counsel objected when defendant Concentra's counsel began to inquire into that subject matter. *See* Exh. B to Plaintiff's Brief. While the plaintiff's counsel allowed the plaintiff to answer some questions over objection on that subject, she eventually instructed him not to answer. *See* Plaintiff's Brief at 5.

Nor does *Jacobs* help the defendants. *Jacobs* held that the psychotherapist-patient privilege was waived in circumstances in which, although the privilege-holder argued that "his psychiatric condition is not part of the litigation and that his claim is nothing more than generalized

---

[3] In federal court, the rules governing discovery seek to encourage disclosure in order to foster the ability of both sides to assess the strength of their claims or defenses, reach a resolution, or prepare for trial. A finding against the plaintiff in these circumstances could have a chilling effect, deterring privilege-holders from engaging in full discovery on a theory or issue they may later wish to reconsider for fear of waiving this sensitive privilege.

11

emotional distress damages[,]" he had "placed his emotional state in issue through his responses to the defendant's interrogatories" and his disclosure to the defendant of two letters to his attorney from treating psychotherapists. *Jacobs*, 258 F.R.D. at 197 (citation and internal punctuation omitted).

*Jacobs* distinguished the controlling authority of *Sims* on the basis that, "[a]lthough the plaintiff in *Sims* was able to avoid waiver of the psychotherapist-patient privilege by expressly abandoning any claim to non-garden-variety emotional injury and by expressly agreeing not to offer privileged communications or other evidence of his psychiatric condition in support of his claim, here, the plaintiff's disavowal falls far short." *Id*.

In this case, the plaintiff's "disavowal" is specific and express, and thus much closer to that made in *Sims* than that made in *Jacobs*. He does not rely, as in *Jacobs*, on mere argument that his psychiatric condition is not part of the litigation. Rather, as in *Sims*, he expressly abandoned any claim to non-garden-variety emotional distress damages and agreed not to offer privileged communications in support of his claim. I perceive no material distinction in the fact that the privilege-holder's disclosures in *Sims* were made solely by way of deposition testimony whereas, here, the plaintiff designated Ouellette as an expert witness, provided her letter, and discussed her treatment of him at deposition over his counsel's objection and following his express renunciation of intent to rely on Ouellette.

In sum, I find that the plaintiff did not waive the psychotherapist-patient privilege by virtue of his earlier disclosures because he effectively negated their significance when, promptly upon learning that he had reason to do so upon receiving the Ouellette file, he timely invoked the

privilege by letter dated September 22, 2015, withdrew his designation of Ouellette as a witness, and agreed to abide by the four *Doe* limitations.[4]

### B. Asserted Prejudice to Defendants of Shielding Records from Discovery

The defendants argue, in the alternative, that they are entitled to Ouellette's treatment records because they "apparently contain information relevant to issues other than emotional distress, including his alcohol use, as well as his behavior at Concentra, which Concentra maintains prevented it from completing its fitness for duty examination." Defendants' Brief at 6. They assert, for example, that in February 2015 the plaintiff experienced a 24-hour period of amnesia during which he performed dangerous work for Lucas Tree, that this event was of concern to Concentra, and that it is highly relevant to the plaintiff's claims, including whether he was a qualified individual with a disability for purposes of his ADA and MHRA claims. *See id.* As a result, they contend, the plaintiff's agreement to abide by the *Doe* factors does not render his mental health treatment records irrelevant, and the defendants will be prejudiced by a denial of access to them. *See id.*

Yet, as noted above, the Supreme Court in *Jaffee* made clear that the psychotherapist-patient privilege is not subject to a balancing test to be employed by a trial judge to determine if the patient's interest in privacy is outweighed by the evidentiary need for the records. *See Jaffee*,

---

[4] The plaintiff cites *Clay v. Woodbury Cty., Iowa,* 965 F.Supp.2d 1055, 1059 (N.D. Iowa July 17, 2013), for the proposition that there are circumstances in which a possible waiver can be "dissolved." Plaintiff's Brief at 6; *see also Clay*, 965 F. Supp.2d at 1059 ("While I see no reason why a litigant could not dissolve [Iowa's] patient-litigant exception by clearly and unambiguously removing a medical condition from his or her case, that has not happened here."). As the defendants observe, *see* Defendants' Reply at 2-3, this observation by the *Clay* court pertained to an implied waiver of the privilege by virtue of the application of Iowa's patient-litigant exception. The *Clay* court went on to rule, in addition, that the privilege-holder had expressly waived the privilege by conduct that included providing the opposing side with copies of her psychotherapist's records. *See Clay*, 965 F. Supp.2d at 1060. The defendants argue that "this case is precisely like *Clay*." Defendants' Reply at 3. In this case, the plaintiff has not shared the Ouellette file with the defendants. In any event, to the extent that *Clay* stands for the proposition that a privilege-holder cannot dissolve a possible express waiver by renouncing reliance on a treating psychotherapist and appropriately cabining his or her damages claim, it interprets Iowa state law and is neither controlling nor persuasive.

518 U.S. at 17-18. That is precisely what the defendants are asking this court to do: to determine that their need to develop or supplement their defense outweighs the plaintiff's interest in protecting his confidential communications with Ouellette. Under *Jaffee*, this argument cannot succeed.

### C. Defendants' Request for Ruling on Certain Categories of Damages

The defendants request that, if the court denies them access to the Ouellette file, it deem some of the plaintiff's potential damage claims beyond the bounds of garden-variety emotional distress damages. *See* Defendants' Brief at 7. Specifically, they seek a ruling that, to the extent that the plaintiff seeks damages flowing from his relapse into alcohol abuse and/or the dissolution of his engagement to his former fiancée, such damages are not garden-variety. *See id.*

I deny this request without prejudice on the basis that it is premature and is appropriately resolved by the trial judge. I note, however, that the plaintiff has pledged to abide by the *Doe* limitations, and will be held to those limitations at trial.

### D. Defendants' Request To Depose Ouellette

Finally, the defendants assert that, regardless of whether or not they are granted access to Ouellette's file, they are entitled to depose her "concerning the subjects set forth in her July 24, 2017 letter" to the plaintiff's counsel. Defendants' Brief at 7. They contend that, having produced the letter to the defendants, the plaintiff expressly waived his psychotherapist-patient privilege at the very least with respect to the information contained therein. *See id.* I deny this request.

As discussed above, the plaintiff effectively dissolved any waiver of the privilege by withdrawing Ouellette as a witness and agreeing to abide by the four *Doe* limitations on emotional distress damages. The treatment of the plaintiff by Ouellette, including information disclosed in her July 24 letter, therefore is no longer relevant to this case.

14

## IV. Conclusion

For the foregoing reasons, I **DENY** the defendants' motion to compel the production of the Ouellette patient notes and records.

### *NOTICE*

*In accordance with Federal Rule of Civil Procedure 72(a), a party may serve and file an objection to this order within fourteen (14) days after being served with a copy thereof.*

*Failure to file a timely objection shall constitute a waiver of the right to review by the district court and to any further appeal of this order.*

Dated this 12th day of November, 2017.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge